UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-CV-22234-DAMIAN/VALLE

SACHA CONCEPCION MALUA,

    Plaintiff,

v.

MARTIN O'MALLEY,[1] Commissioner of
Social Security Administration*,*

    Defendant.

_____

## REPORT AND RECOMMENDATION TO DISTRICT JUDGE

THIS MATTER is before the Court upon Plaintiff Sacha Conception Malua's Motion for Summary Judgment (ECF No. 10) and Defendant's Motion for Summary Judgment (ECF No. 11) (together, the "Motions"). U.S. District Judge Melissa Damian has referred the Motions to the undersigned for a Report and Recommendation. (ECF No. 13).

After due consideration of the record and the parties' briefs, including Defendant's Response (ECF No. 11), Plaintiff's Reply (ECF No. 12), and being otherwise duly advised on the matter, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and the Administrative Law Judge's Decision ("ALJ Decision") be **AFFIRMED** for the reasons set forth below.

---

[1] Martin O'Malley has been appointed as Commissioner of Social Security. Consequently, pursuant to Federal Rule of Civil Procedure 25(d), Mr. O'Malley is substituted for Kilolo Kijakazi (previously Acting Commissioner) as Defendant in this case.

## I.  PROCEDURAL HISTORY

This suit involves Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. (the "Act"). Plaintiff applied for benefits December 6, 2019, alleging a disability onset date of November 6, 2017.[2] (R. 243-48).[3] Plaintiff's claim was denied initially and again upon reconsideration. (R. 87,103). Plaintiff requested a hearing, which was held on February 23, 2022, before ALJ Norman Hemming. (R. 45-74, 159-60). Plaintiff, who was represented by counsel, and a Vocational Expert ("VE") both testified at the hearing. (R. 50-74). On March 2, 2022, the ALJ issued a decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act. (R. 10-20).

Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision." (R. 1-5); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review of the ALJ's Decision. (ECF No. 1); *see also* 42 U.S.C. § 405(g). Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.  STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record to support the ALJ's finding and whether the ALJ applied the correct legal standards in making his determination. *Biestek v. Berryhill*, 587 U.S 97, 102 (2019); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x. 863, 864 (11th Cir. 2011) (citation omitted); *see also* 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla," and means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 587 U.S. at 103

---

[2] The initial onset date was October 2014, but Plaintiff amended it during the hearing before the ALJ. *Compare* (R. 10)*, with* (R. 49-50).

[3] All references are to the record of the administrative proceeding, which was filed as part of the Defendant's Answer. *See* (ECF No. 8).

(quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Carson*, 440 F. App'x. at 864 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance"). A court, however, 'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ].'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.*

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. § 423 (standard for DIB). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4) (evaluation process for DIB). An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

Importantly, the burden of proof rests on the claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004). At Step 4, the ALJ must assess: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The regulations define RFC as that which an individual is still able to do despite the limitations caused by her impairments. 20 C.F.R. § 404.1545(a). The ALJ will "assess and make a finding about [the claimant's RFC] based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). The RFC assessment is used to determine whether the claimant can return to her past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted). If a claimant cannot return to her past relevant work, then the ALJ proceeds to Step 5. *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v); *Phillips*, 357 F.3d at 1239. The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform. *Phillips*, 357 F.3d at 1239. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. *Id.* Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled. *Id.* The ALJ may determine whether the claimant is able to adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. Part 404, Subpart P, Appendix 2);

or (2) using a Vocational Expert, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy. *Id.* at 1239-40.

### III. THE ALJ'S DECISION

After reviewing the evidence and conducting the requisite five-step analysis, the ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from November 6, 2017, the alleged onset date, through the date of the decision." (R. 20).

At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 6, 2017, the alleged onset date. (R. 12).

At Step 2, the ALJ found that Plaintiff had the severe impairments of dysfunction of major joints, obesity, borderline personality disorder, major depressive disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder. (R. 13).

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. (R. 13-14).

Before proceeding to Step 4, the ALJ determined Plaintiff's RFC. Specifically, the ALJ found that Plaintiff had the RFC to perform light work, but was limited to: (i) occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, or crawling; (ii) never climbing ladders, ropes, or scaffolds; (iii) frequently operating foot controls with her left foot; (iv) frequent exposure to supervisors, coworkers, and the public; and (v) simple, routine tasks. (R. 14).

In reaching this conclusion at Step 4, the ALJ considered Plaintiff's symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, as well as opinion evidence. (R. 15). Although the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity,

persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (R. 16). Nonetheless, the ALJ found that Plaintiff was unable to perform her past relevant work and proceeded to Step 5. (R. 18-20).

At Step 5, the ALJ found that there were other jobs in the national economy that Plaintiff could perform, such as marker, router, and housekeeping cleaner (all unskilled, light work with an SVP of 2). (R. 19-20). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (R. 20).

## IV.    DISCUSSION

Plaintiff raises two arguments on appeal. First, Plaintiff argues that the ALJ's hypotheticals to the VE were incomplete because they did not include moderate limitations in concentration, persistence, and pace to account for Plaintiff's mental impairments. (ECF No. 10 at 7-12). Next, Plaintiff argues that the ALJ erred in assessing the opinion of Dr. Robert Antoine, Plaintiff's treating psychiatrist. *Id.* at 14-17.[4] As discussed below, the undersigned finds that substantial evidence supports the ALJ's Decision and that the ALJ applied the proper legal standards. Accordingly, the ALJ's Decision should be affirmed.

**A. The ALJ's Hypotheticals to the VE Were Proper**

Plaintiff argues that the ALJ's hypotheticals to the VE were flawed because they did not include that Plaintiff had moderate limitations in concentration, persistence, and pace. *Id.* at 12. More specifically, in determining Plaintiff's RFC, the ALJ found that Plaintiff could perform light work, but was limited to: (i) occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, or crawling; (ii) never climbing ladders, ropes, or scaffolds; (iii) frequently operating

---

[4] Although challenging the ALJ's evaluation of Dr. Antoine, Plaintiff mistakenly references an individual ("Ms. Johnson") and medical provider ("ARNP Delgado") who are not part of this record. (ECF No. 10 at 14-15). Accordingly, the Court does not consider that portion of Plaintiff's brief.

6

foot controls with her left foot; (iv) frequent exposure to supervisors, coworkers, and the public; and (v) simple, routine tasks. (R. 14).

During the hearing, the ALJ posed several hypotheticals to the VE.[5] In relevant part, the ALJ asked the VE whether Plaintiff's past relevant work would be available for an individual with Plaintiff's, age, education, and previous work experience, who could perform solely light work, but was limited to: (i) never climbing ladders/ropes/scaffolds; (ii) frequent exposure to supervisors, coworkers, and the public; and (iii) simple, routine, repetitive tasks with jobs at a level 1 and 2 reasoning level. (R. 70). The VE testified that although such an individual could not perform Plaintiff's past relevant work, she could nonetheless work as a marker, router, and housekeeping cleaner (all unskilled, light work with an SVP of 2). (R. 70-71); *see also* (R. 20) (ALJ's summary chart of other available work). The ALJ then asked the VE whether the individual in that hypothetical could perform any jobs in the national economy (including the three alternative jobs the VE had identified) if the individual was further limited to working only six hours in an eight-hour day because of psychological symptoms. (R. 71). The VE testified that such an individual would be precluded from all work.[6] *Id.*

In crafting the hypotheticals to the VE, an ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Fatone v. Kajakazi*, No. 20-CV-

---

[5] The ALJ's initial hypothetical to the VE was whether an individual with Plaintiff's, age, education, and previous work experience, who could perform solely light work, but was limited to occasionally climbing ramps/stairs/ladders/ropes/scaffolds, balancing, stooping, kneeling, crouching, and crawling, could perform Plaintiff's past work. (R. 69-70). In response, the VE testified that Plaintiff's past relevant work as an informal waitress would still be available. (R. 70). The initial hypothetical, however, did not include mental limitations.

[6] Upon further questioning by Plaintiff's counsel, the VE testified that if the hypothetical individual described above needed to be reminded about her job duties once every hour in an eight-hour day and to remain on task throughout the day, that individual would be precluded from all work. (R. 72). Additionally, if the individual could never interact with the public or fellow coworkers, that individual would also be precluded from all work. *Id.* Lastly, if the individual would have up to three absences per month, that individual would also be precluded from all work. *Id.*

62260, 2022 WL 1110046, at *8 (S.D. Fla. Feb. 24, 2022) (citation omitted), *report and recommendation adopted*, 2022 WL 883719 (S.D. Fla. Mar. 25, 2022); *see also Crawford*, 363 F.3d at 1161 (noting that the ALJ was not required to include findings in the hypothetical that were properly rejected as unsupported); *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013) ("[A]n ALJ is not required to instruct the VE to assume conditions that he does not find to exist") (citation omitted). Moreover, the hypothetical need only include "'the claimant's impairments,' . . . not each and every symptom of the claimant." *Sims v. Comm'r, Soc. Sec. Admin.*, No. 22-11154, 2023 WL 6845517, at *3 (11th Cir. Oct. 17, 2023) (quoting *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007)).

Here, two of the hypotheticals to the VE limited Plaintiff to simple, routine, repetitive tasks with jobs at a reasoning level of 1 and 2. (R. 70-71). Despite this limitation, Plaintiff argues that the ALJ omitted moderate limitations in Plaintiff's concentration, persistence, and pace (part of the ALJ's Psychiatric Review Technique (the "PRT")). (ECF No. 10 at 9-11). In evaluating a claimant's mental impairment, the ALJ must follow the PRT, which assesses a claimant's degree of functional limitation in several areas, including concentration, persistence, or pace. *Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005); 20 C.F.R. § 404.1520a(a), (c)(3)-(4). "Concentration, persistence, or pace refers to the claimant's ability to sustain focused attention and concentration sufficiently long enough to permit [her] to timely and appropriately complete tasks that are commonly found in work settings." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (citations omitted). The ALJ must include the results of the PRT into his findings and conclusions. *Moore*, 405 F.3d at 1213-14; *see also Waters v. Berryhill*, No. 17-CV-60491, 2018 WL 2688762, at *10 (S.D. Fla. Mar. 20, 2018) (citation omitted). The ALJ, however, is "not required to include findings in the hypothetical that the ALJ properly rejected as

8

unsupported." *Waters,* 2018 WL 2688762, at *10; *Crawford*, 363 F.3d at 1161; *Denomme*, 518 F. App'x at 878.

Although the ALJ did not expressly include a limitation on concentration, persistence, and pace in the hypotheticals to the VE, the ALJ limited Plaintiff to simple, routine, repetitive tasks, with jobs at a reasoning level of 1 and 2. (R. 70). *See, Est. of White v. Saul*, No. 19-CV-61745, 2020 WL 5351064, at *17 (S.D. Fla. Aug. 26, 2020) (concluding that reasoning level of 1 is consistent with simple, repetitive tasks), *report and recommendation adopted*, 2020 WL 5291966 (S.D. Fla. Sept. 4, 2020). This hypothetical is consistent with the ALJ's limitation of Plaintiff to simple, routine, repetitive tasks, (R. 14), and sufficiently accounts for Plaintiff's limitation in concentration, persistence, and pace.

Case law supports this conclusion. *See, e.g., Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) ("Because the medical evidence showed that [claimant] could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's [limitation] to unskilled work sufficiently accounted for [claimant's] moderate difficulties in concentration, persistence, and pace"); *Sullivan v. Kijakazi*, No. 21-CV-997, 2023 WL 1433437, at *4 (M.D. Fla. Feb. 1, 2023) (collecting cases finding that "a moderate limitation in concentration, persistence and pace can be sufficiently accounted for by posing a hypothetical to a VE that limits an individual to simple, unskilled work (or something similar) when the medical evidence demonstrates an ability to perform such work"); *Dambra v. Kijakazi*, No. 21-CV-1524, 2022 WL 4463603, at *4 (M.D. Fla. Sept. 26, 2022) (same); *Jackson v. Kijakazi*, No. 20-CV-00039-KFP, 2021 WL 4472597, at *6 (M.D. Ala. Sept. 29, 2021) (concluding that limitation to "simple work" accounts for plaintiff's limitation in concentration as supported by case law and the medical record); *Ortiz v. Comm'r of Soc. Sec.*, No. 18-CV-2060-ORL-28EJK, 2020 WL 378490, at *7 (M.D. Fla. Jan. 8, 2020) (noting that hypothetical posed to VE restricted plaintiff to simple

and routine tasks, which implicitly accounted for plaintiff's moderate mental limitations), *report and recommendation adopted*, 2020 WL 377177 (M.D. Fla. Jan. 23, 2020).[7]

The record further supports the undersigned's conclusion that the hypotheticals to the VE sufficiently accounted for Plaintiff's limitation in concentration, persistence, and pace. More specifically, in discussing Dr. Antoine's progress notes,[8] the ALJ wrote:

> In understanding, remembering, or applying information, the claimant has mild limitations. She does not need help or reminders taking medicine (Exhibit 6E at 1). Her psychiatrist noted an appropriate fund of knowledge for her age and level of education. Further, mental status examinations showed intact recent and remote memory (Exhibit 1F[,] 3F[,] 5F[.]). This evidence does not support a finding of more than moderate deficits in this domain.[9]
>
> In interacting with others, the claimant has moderate limitations. She communicated with generally normal speech on several instances. She was described as cooperative.

---

[7] Similarly, this Court and the Eleventh Circuit have found no error in similar hypotheticals from the ALJ to the VE. *See, e.g., Waters,* 2018 WL 2688762, at *11 (no error in hypothetical to the VE that accurately reflected the limitations supported by substantial evidence); *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 542 & n.5 (11th Cir. 2016) (no error in hypothetical that accounted for limitations in concentration, persistence and pace, even if the ALJ did not use precise language but limited claimant to "short, simple instructions" and "occasional contact with co-workers and the general public on routine matters"); *Carpenter v. Comm'r of Soc. Sec.*, 614 F. App'x 482, 490 (11th Cir. 2015) (no error in hypothetical that included only unskilled work when medical evidence shows claimant can engage in simple, routine tasks or unskilled work despite mental limitations); *Szilvasi v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 898, 902 (11th Cir. 2014) (no error in hypothetical where the ALJ considered claimant's mental limitations before finding that claimant could perform simple, repetitive tasks); *Kunz v. Comm'r of Soc. Sec.*, 539 F. App'x 996, 996 (11th Cir. 2013) (no error in hypothetical where claimant was limited to understanding and performing simple routine tasks and to brief interaction with others); *Jacobs*, 520 F. App'x at 951 (distinguishing *Winschel* to find no error in hypothetical that fully accounted for moderate difficulties in concentration, persistence, and pace by limiting claimant to one to three step non-complex tasks); *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 690 (11th Cir. 2013) (no error in hypothetical where medical evidence showed claimant could perform simple, one and two step tasks); *Washington v. Soc. Sec. Admin.*, 503 F. App'x 881, 883 (11th Cir. 2013) (no error in hypothetical that limited claimant to simple, routine repetitive tasks and only occasional changes in work setting, judgment or decision making, as supported by the medical evidence).

[8] Dr. Antoine treated Plaintiff almost monthly (with very few gaps) between November 2017 and November 2021. *See* Exhibits 1F (at R. 440) (11/6/2017 visit), 3F (progress notes for visits in 2020), and 5F (progress notes for visits in late 2020 through late 2021).

[9] The first sentence of this domain references "mild" limitations, while the conclusion states "moderate" deficits. (R. 13). This inconsistency, however, does not affect the undersigned's analysis.

10

> Additionally, there was no evidence of paranoia, bizarre behavior, or other types of delusions (Exhibit 1F[,] 3F[,] 5F[.]). This evidence does not support a finding of more than moderate deficits in this domain.
>
> With regard to concentrating, persisting, or maintaining pace, the claimant has moderate limitation. She demonstrated a logical thought process. Mental status examinations revealed normal associations and unremarkable thought content. Furthermore, her attention and concentration also deemed good (Exhibits 1F[,] 3F[,] 5F[.]). This evidence does not support a finding of more than moderate deficits in this domain.
>
> As for adapting or managing oneself, the claimant has mild limitations. She is able to cook, go places alone, shop for her personal needs, and manage her personal grooming independently (Exhibit 6E at 1; Exhibit 11E). She remained fully oriented. She denied perceptual disturbances, such as hallucinations or delusions. Moreover, her insight and judgment were considered good (Exhibit 1F[,] 3F[,] 5F[.]). This evidence does not support a finding of more than mild deficits in this domain.

(R. 13-14). The ALJ concluded that "there is no evidence that shows that changes or increased demands have led to exacerbation in the claimant's symptoms and signs and to deterioration in her functioning. For example, the record fails to show that the claimant has become unable to function outside of her home or a more restrictive setting, without substantial psychosocial supports." (R. 14). Further, "the positive objective clinical and diagnostic findings since the alleged onset date . . . do not support more restrictive functional limitations than those assessed[.]" (R. 15).

In sum, the ALJ's hypotheticals to the VE included a limitation to simple, routine, repetitive tasks with jobs at a 1 and 2 reasoning level, which sufficiently account for Plaintiff's mental impairments.[10] *See, e.g., Mijenes*, 687 F. App'x at 846 (concluding that limiting claimant

---

[10] Relatedly, Plaintiff argues that the ALJ erred in omitting the limitation to jobs with a reasoning skill level (RSL) 1 or 2 from the RFC. (ECF No. 10 at 11). This omission, however, is at most, harmless error because the hypotheticals were more restrictive than the RFC finding. Accordingly, remand to the ALJ would not alter the conclusion that Plaintiff could perform other jobs in the national economy and Plaintiff's argument about the RSL fails. *See, e.g., Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (finding harmless error when error does not affect the ALJ's ultimate determination) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error doctrine after finding that ALJ made "erroneous statements of fact"); *White*, 2020 WL 5351064, at *16 (applying harmless error where difference between RFC and hypothetical was inconsequential to the conclusion).

to unskilled work sufficiently accounted for moderate difficulties in concentration, persistence, and pace); *Sullivan*, 2023 WL 1433437, at *4 (concluding that ALJ properly accounted for claimant's mental limitations when hypotheticals to the VE limited claimant to simple, routine, and repetitive tasks and ALJ identified unskilled work); *Dambra*, 2022 WL 4463603, at *4 (finding hypothetical that included limitation to simple, routine tasks, and job reasoning level 1 or 2 sufficiently accounted for plaintiff's moderate limitations in concentration, persistence, and pace); *Jackson*, 2021 WL 4472597, at *6 (limitation to simple work in hypothetical to VE sufficiently accounts for plaintiff's limitation in concentration); *Ortiz*, 2020 WL 378490, at *7 (concluding that ALJ adequately accounted for plaintiff's moderate mental limitations by restricting hypothetical to simple and routine tasks).[11] Accordingly, the ALJ's Decision should be affirmed.

### B. The ALJ Properly Assessed Dr. Antoine's Opinion

Plaintiff next argues that the ALJ erred in weighing the opinion of Dr. Antoine, Plaintiff's treating psychiatrist. (ECF No. 10 at 15-18). In relevant part, Social Security regulations require the ALJ to consider and evaluate every medical opinion received in determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). Medical opinions are statements "from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" regarding her ability to perform

---

[11] Against the weight of this case law, the undersigned is unpersuaded by Plaintiff's reliance on *Concepcion v. Commissioner* in her reply. *See* (ECF No. 12 at 2-3). In *Concepcion,* the Court's finding that the ALJ erred in the hypothetical to the VE was dicta because remand was required for an updated consultative mental evaluation. *Concepcion*, No. 12-CV-200-ORL-DAB, 2013 WL 75142, at *4 (M.D. Fla. Jan. 7, 2013).

physical demands (such as sitting, standing, walking, reaching, and handling, among others) and mental demands of work activities (such as understanding, remembering, and maintaining concentration, persistence, and pace). 20 C.F.R. § 404.1513(a)(2).

Moreover, while a medical source's "treatment relationship" with a claimant remains a factor to be considered in assessing an opinion's persuasiveness, for cases filed after March 27, 2017, a treating source's opinion is no longer entitled to controlling weight or deferential treatment. *Ramos v. Kijakazi,* No. 20-CV-23478, 2021 WL 5746358, at *9 (S.D. Fla. Nov. 9, 2021), *report and recommendation adopted*, 2021 WL 5743332 (S.D. Fla. Dec. 2, 2021); *Bonilla v. Saul,* No. 19-CV-25323, 2020 WL 9048787, at *4 (S.D. Fla. Oct. 23, 2020), *report and recommendation adopted*, 2021 WL 1198296 (S.D. Fla. Mar. 30, 2021). Instead, the persuasiveness of any medical source's opinion (whether treating, examining, or reviewer) depends on whether the opinion: (i) is supported by objective medical evidence and the source's explanation of his opinion; and (ii) is consistent with other evidence in the medical record. 20 C.F.R. § 404.1520c(c)(1)-(2). These factors, referred to as "supportability" and "consistency," are the "most important factors" in the ALJ's analysis.[12] 20 C.F.R. § 404.1520c(b)(2); *Bonilla*, 2020 WL 9048787, at *4. While the ALJ must articulate how he considered medical opinions from all medical sources, the ALJ need only explain his consideration of the supportability and consistency factors. *Bonilla*, 2020 WL 9048787, at *5; *see also* 82 Fed. Reg. 5844-01, 5858 (Jan. 18, 2017); 20 C.F.R. § 404.1520c(b)(2).

Here, Dr. Antoine treated Plaintiff for approximately four years, with almost monthly visits between November 2017 and November 2021. *See* Exhibits 1F (at R. 440) (11/6/2017 visit), 3F

---

[12] Other factors include treatment relationship with the claimant, area of specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c)(3)-(5).

13

(progress notes for visits in 2020), and 5F (progress notes for visits in late 2020 through late 2021). In January 2022, Dr. Antoine completed a Treating Source Statement – Psychological Conditions on Plaintiff's behalf. (Exhibit 4F) (R. 542-46) ("Dr. Antoine's opinion"). In his opinion, Dr. Antoine diagnosed Plaintiff with attention deficit disorder, generalized anxiety disorder, and major depressive disorder, with a guarded prognosis. (R. 542). Among other things, Dr. Antoine opined that Plaintiff would have markedly limited ability[13] in: (i) interacting with others, with recurring problems at work and resulting in removal; (ii) concentrating, persisting, maintaining pace, maintaining in-depth conversations, or elaborating greatly on thoughts; and (iii) adapting or managing herself with exemplary limitations as explosive, impulsive, limited frustration tolerance. (R. 544). Dr. Antoine also opined that Plaintiff had mildly limited short-term memory. (R. 545).

According to Dr. Antoine, Plaintiff's functional impairments include: (i) mild limitations in remembering locations, work-like procedures, and understanding and carrying out very short and simple instructions; and (ii) moderate limitations in understanding and carrying out detailed but uninvolved written and oral instructions. *Id.* Dr. Antoine also opined that Plaintiff's sustained concentration and persistence was limited to less than 15 minutes before needing redirection/break. *Id.* Plaintiff, however, would maintain regular attendance, punctuality, and would not require enhanced supervision. *Id.* Dr. Antoine further opined that Plaintiff would not be able to work appropriately with the public or co-workers, and could only sometimes (but not consistently) work with supervisors. *Id.* Dr. Antoine explained that Plaintiff preferred isolation and any social contact would cause significant anxiety. (R. 546). Plaintiff would also maintain socially appropriate behavior sometimes (but not consistently) and would not respond appropriately to changes in work settings, and transitions would result in traumatic state. *Id.* Finally, Dr. Antoine opined that

---

[13] "Markedly" limited is a serious limitation in the ability to function independently, appropriately, and effectively on a sustained basis. (R. 544).

Plaintiff would be off task 20% of the day and would be absent from work on average three days a month due to her impairments. *Id.*[14]

After reviewing the record and the medial opinions, the ALJ found Dr. Antoine's opinion "not persuasive" as unsupported by the record and inconsistent with the doctor's treatment notes. (R. 17). Plaintiff, however, argues that the ALJ erred in evaluating Dr. Antoine's opinion and failed to consider Plaintiff's "fluctuating/intermittent progress" and the "cyclical nature" of Plaintiff's mental impairments. (ECF Nos. 10 at 16, 12 at 3). Upon review of the record, the undersigned finds that the ALJ properly articulated his consideration of Dr. Antoine's treatment notes and opinion of Plaintiff's mental impairments. For example, in summarizing Dr. Antoine's treatment notes, the ALJ wrote:

> During the adjudicative period, the claimant sought psychiatric treatment from Dr. Antoine. Despite the claimant's allegations, mental status examinations were largely unremarkable. The claimant was fully oriented. During several visits, her speech was clearly articulated and of normal rate and tone. Her language usage was normal. Her fund of knowledge was within normal limits. She as cooperative. She denied perceptual disturbances, such as hallucinations or delusions. Her thought process was logical and her associations were normal. Her thought content was unremarkable. Her attention and concentration were within normal limits. There were no memory deficits. Her insight and judgment were good (Exhibit 1F[,] 3F[,] 5F[.]). Moreover, she often reported that she was doing "okay" (Exhibit 1F[,] 3F[,] 5F[.]).

---

[14] Dr. Antoine also opined that Plaintiff's diagnosis included tension, anxiety, hypervigilance, impending doom, distractibility, racing thoughts, and irritation. (R. 542). Further, Plaintiff's depression included: (i) anhedonia or pervasive loss of interest in almost all activities; (ii) appetite disturbance with change in weight; (iii) sleep disturbance; (iv) psychomotor agitation; (v) decreased energy; (vi) feelings of guilt or worthless; and (vii) difficulty concentrating or thinking. (R. 543). Plaintiff's anxiety included: (i) motor tension; (ii) autonomic hyperactivity; (iii) apprehensive expectation; (iv) vigilance and scanning; (v) recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom or occurring at least once a week; (vi) persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity, or situation. *Id.* Dr. Antoine further opined that Plaintiff's residual disease resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would cause Plaintiff to decompensate. *Id.* Dr. Antoine's clinical findings (including mental status examinations) characterized Plaintiff as having impaired affect regulation, impaired top-down inhibition of emotional lability, poor concentration/attention, limited abstraction, and low adaptability. *Id.*

(R. 16). Thus, the ALJ concluded that Dr. Antoine's opinion was "not persuasive" and further explained:

> [Dr. Antoine's] treatment notes document generally normal mental status examination findings. In particular, there were no memory deficits. The claimant was cooperative and did not exhibit paranoia, bizarre behavior, or other types of delusions. She demonstrated a logical thought process. Mental status examinations revealed normal associations and unremarkable thought content. [Plaintiff's] attention and concentration were deemed good. Her insight and judgment were also considered good (Exhibit 1F[,] 3F[,]5F[.]).
>
> * * *
>
> The record documents evidence underlying claimant's impairments that could be expected to produce the claimant's reported symptoms. However, the overall evidence does not support the level of symptom intensity, persistence, and functionally limiting effect alleged by the claimant. Towards that end, I note the claimant has not received the type of treatment one would expect from a totally disabled individual. Specifically, the lack of aggressive treatment, such as surgical intervention or psychiatric admission, suggests the claimant's symptoms and limitations were not as severe as alleged. In fact, she informed her psychiatrist that she was doing "okay" during several visits (Exhibit 1F[,] 3F[,]5F[.]).

(R. 17-18).

Against this legal and factual backdrop, Plaintiff's argument alleging greater mental limitations is unpersuasive. Rather, the ALJ reviewed and accurately summarized hundreds of pages of treatment notes from Dr. Antoine, which reflected—despite Plaintiff's depression—mostly normal mental status examinations. (Exhibits 1F, 3F, 5F); *see also Damato v. Kijakazi*, No. 20-CV-61949, 2022 WL 616800, at *9 (S.D. Fla. Feb. 14, 2022), *report and recommendation adopted*, 2022 WL 612617 (S.D. Fla. Mar. 2, 2022) (concluding the ALJ properly evaluated doctor's opinion as "somewhat persuasive" where claimant was only moderately limited by mental impairments).[15] As the ALJ explained, the ALJ found Dr. Antoine's opinion: (i) unpersuasive as

---

[15] The undersigned is also unpersuaded by Plaintiff's cursory reference to Dr. Meruelo as deferring to Dr. Antoine's assessment of Plaintiff's mental impairments. (ECF No. 10 at 16). Dr. Meruelo is a one-time consultative examiner who opined that Plaintiff's disability case was "basically psychiatric" with chronic anxiety, depression, panic attacks and he "totally deferred" to Dr. Antoine. (R. 449).

16

unsupported by the doctor's treatment records (supportability), which reflected mostly normal mental status findings; and (ii) inconsistent with other evidence in the record (consistency). (R. 13-14, 17). Therefore, the ALJ's discussion of these two factors belies Plaintiff's allegations of error.

Further, Plaintiff reliance on *Simon v. Commissioner, Social Security Administration* and *Henkel v. Commissioner of Social Security Administration* is misplaced. (ECF Nos. 10 at 14, 12 at 3). Both cases are legally and factually distinguishable. More specifically, *Simon* was decided under the pre-2017 regulations, which are inapplicable to this case. *Simon v. Commissioner, Social Security Administration*, 7 F.4th 1094, 1104 n.4 (11th Cir. 2021). Further, in *Simon* the Eleventh Circuit criticized the lower court's analysis of a claimant's mental health record for failing to discuss significant clinical findings, including the claimant's panic attacks, racing thoughts, mood swings, anger outbursts, memory problems, paranoia, and isolation. *Simon*, 7 F.4th at 1106. That is simply not the case here.

Similarly, in *Henkel*, the District Court concluded that the ALJ erred when it found that claimant's bipolar disorder was not severe. *Henkel v. Comm'r of Soc. Sec. Admin.*, No. 20-CV-14363, 2022 WL 2012421, at *4 (S.D. Fla. May 23, 2022), *report and recommendation adopted*, 2022 WL 1978711 (S.D. Fla. June 6, 2022). In contrast, the ALJ's Decision here reflects his fulsome consideration of Plaintiff's mental health in that Plaintiff's severe impairments included borderline personality disorder, major depressive disorder, generalized anxiety, and attention deficit disorder, which limited Plaintiff to simple, routine, repetitive tasks. (R. 13, 14); *see also Fatone,* 2022 WL 1110046, at *8 (finding *Simon* inapplicable where ALJ considered opinions and treatment records on mental health and limited claimant to simple, routine, repetitive tasks, with only occasional interaction with coworkers, supervisors, and public).

Ultimately, the issue is not whether some evidence might support Plaintiff's allegations. *See Dyer*, 395 F.3d at 1210; *Ellison*, 355 F.3d at 1275. Nor is it for the Court to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (citation omitted). Rather, the Court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor*, 786 F.2d at 1053. Furthermore, even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. Thus, after reviewing the record as a whole, the undersigned finds that substantial evidence supports the ALJ's Decision and that the ALJ applied the proper legal standards in evaluating the medical opinions. *See e.g.*, *Broomfield v. Kijakazi*, No. 22-CV-60879, 2023 WL 6376456, at *9 (S.D. Fla. Sept. 29, 2023) (concluding that ALJ properly evaluated medical opinions based on regulatory factors of consistency and supportability); *Bryant v. Kijakazi*, No. 20-CV-61819, 2023 WL 7413594, at *6 (S.D. Fla. July 7, 2023), *report and recommendation adopted*, 2023 WL 7410371 (S.D. Fla. Nov. 9, 2023) (same); *Gleicher v. Kijakazi*, No. 21-CV-60014, 2022 WL 16829691, at *6 (S.D. Fla. Sept. 2, 2022), *report and recommendation adopted*, 2022 WL 4596706 (S.D. Fla. Sept. 30, 2022) (same); *Claude v. Kijakazi*, No. 21-CV-60104, 2022 WL 4449384, at *7 (S.D. Fla. Sept. 9, 2022), *report and recommendation adopted*, 2022 WL 4448247 (S.D. Fla. Sept. 23, 2022); *Koda v. Kijakazi*, No. 21-CV-60934, 2022 WL 6566495, at *8 (S.D. Fla. Aug. 26, 2022), *report and recommendation adopted*, 2022 WL 4354042 (S.D. Fla. Sept. 20, 2022).

## V. RECOMMENDATION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (ECF No. 10) be **DENIED,** that Defendant's Motion for Summary Judgment (ECF No. 11) be **GRANTED**, and that the ALJ's Decision be **AFFIRMED**.

Within **14 days** after being served with this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this District.  28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b).  Failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation.  11th Cir. R. 3-1 (2023); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida, on August 1, 2024.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge Melissa Damian
　　All Counsel of Record